**RECORD CLUB OF AMERICA, INC., Plaintiff,**

v.

**UNITED ARTISTS RECORDS, INC., Defendant.**

No. 72 Civ. 5234 (WCC).

United States District Court, S.D. New York.

Feb. 22, 1990.

Nancy G. Grossman, McGuire & Tiernan, New York City, for plaintiff; Harold F. McGuire, of counsel.

Donovan Leisure Newton & Irvine, New York City, for defendant; Daniel R. Murdock, John D. Worland, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

United Artist Records, Inc. ("UAR") moves for taxation of the cost of a letter of credit obtained to secure a supersedeas bond. The district court judgment clerk denied such taxation on January 26, 1990 after the Second Circuit Court vacated this Court's previous judgment and remanded for proceedings not inconsistent with its opinion. *See Record Club of America, Inc. v. United Artists Records, Inc.*, 890 F.2d 1264 (2d Cir.1989). Record Club of America, Inc. ("RCOA") opposes UAR's motion and moves to vacate the taxation of other costs imposed by the district court judgment clerk.[1] For the following reasons, both motions are denied.

1. The district court judgment clerk taxed costs totalling $6,743.50, including $4,719.00 for a

## DISCUSSION

■ Preliminarily, this Court must determine whether, as RCOA argues, the taxing of costs is premature. When costs are awarded on appeal, a portion of the costs is taxed in the circuit court and a portion is taxed in the district court. *See* Fed.R. App.P. 39(e) Advisory Committee's Notes ("[costs described in this subdivision] are made taxable in the district court for general convenience"). A district court lacks discretion to refuse to impose the costs on appeal when ordered to do so by the Second Circuit Court, *Lamborn v. Dittmer*, 726 F.Supp. 510 (S.D.N.Y.1989).

■ When a judgment is vacated, "costs shall be allowed only as ordered by the [appellate] court." Fed.R.App.P. 39(a). Since the Second Circuit Court concluded its opinion vacating this Court's prior judgment with the words "costs to defendant [UAR]," RCOA cannot argue persuasively that taxing of costs by the district court under Fed.R.App.P. 39(e) is premature. The fact that the Court of Appeals has yet to determine the costs it will tax against RCOA is irrelevant to this Court's duty to fix the costs taxed in the district court under Rule 39(e). Since RCOA raises no other objection to the district court judgment clerk's taxation of $6,743.50, it is hereby upheld.

■ The Court now turns to the district court judgment clerk's refusal to tax the cost of the letter of credit. While the district court has discretion to fix costs under Fed.R.Civ.P. 54(d), *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 233, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964), such discretion does not include the ability to tax costs beyond those authorized by statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–43, 107 S.Ct. 2494, 2497–98, 96 L.Ed.2d 385 (1987). Rule 39(e) provides:

> Costs incurred in the preparation and transmission of the record, the cost of

premium paid to the bonding firm for the $3,905,940.40 supersedeas bond.

the reporter's transcript, if necessary for the determination of the appeal, the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal, and the fee for filing the notice of appeal shall be taxed in the district court as costs of the appeal in favor of the party entitled to costs under this rule.

Since Rule 39(e) governs the costs which may be taxed on appeal, the issue presented is whether the premium on a letter of credit to secure a supersedeas bond constitutes a "cost" of that bond under Rule 39(e).

The district court in *Lamborn v. Dittmer,* 726 F.Supp. 510 (S.D.N.Y.1989) recently held that the cost of a letter of credit as collateral for a supersedeas bond could not be taxed against the non-prevailing party based on the Second Circuit Court's decision in *Lerman v. Flynt Distributing Co., Inc.,* 789 F.2d 164 (2d Cir.), *cert. denied,* 479 U.S. 932, 107 S.Ct. 404, 93 L.Ed.2d 357 (1986). In *Lerman,* the party prevailing on appeal borrowed a million dollars at 15% interest to secure a supersedeas bond and received no interest on the million dollars from the bonding company. The party then requested the difference between its interest payments and the amount it could have made if it invested the sum borrowed at the prevailing money market rates. The Second Circuit Court held that the district court's taxing of the lost interest was an abuse of discretion because "borrowing expense, sought in addition to the premium on a supersedeas bond, is not a permissible item of taxable appellate costs ..." *Id.* at 167.

As *Lamborn* recognized, there is no significant difference between interest charges on borrowed funds used as collateral and charges for a letter of credit. While UAR attempts to distinguish *Lerman* on the grounds that UAR's costs, unlike the costs in *Lerman,* were not clearly unreasonable, the reasonableness of the costs was not a factor in *Lerman's* broad

holding. Based on *Lerman,* therefore, UAR cannot recover the costs of its letter of credit.[2]

Nor can UAR rely on *Trans World Airlines, Inc. v. Hughes,* 515 F.2d 173, 177 (2d Cir.1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976), in which the Second Circuit Court stated, "[w]hen a judgment is reversed ... the costs of obtaining a supersedeas bond have long been held to be a proper item of costs ..." The Second Circuit Court in *Lerman* distinguished *Trans World Airlines* on its facts and limited its holding to cases where the costs are agreed to by the parties and are less expensive substitutes for costs explicitly authorized by Rule 39(e). *Lerman,* 789 F.2d at 166.

It is uncontested that UAR never approached RCOA to seek agreement on alternative means to a letter of credit. Nor did UAR seek this Court's permission for the letter of credit or otherwise bring the matter to this Court's attention. Furthermore, it is by no means clear that the total cost of the letter of credit and the bond premium was less than what the total cost of the premium would have been without the letter of credit. An attorney for UAR presents an affidavit stating that bonding companies at the relevant time indicated that rates of 1% of the bond amount or less were possible for a subsidiary of a firm "like" Thorn–EMI (a parent corporation of Capitol Records, Inc. ("Capitol") into which UAR was merged in the early 1980's). While this supports UAR's claim that its costs were less than the cost of a premium alone, it appears that these rate quotations were not based on an examination of the financial statements of Capitol or Thorn–EMI. Indeed, UAR claims that it was required by the bonding companies to obtain the letter of credit because neither Capitol nor Thorn–EMI, Capitol's British parent corporation, maintained its financial statements in a form acceptable to the bonding

---

**2.** This is consistent with the Ninth Circuit Court's decision in *Johnson v. Pacific Lighting Land Co.,* 878 F.2d 297 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 407, 107 L.Ed.2d 373 (1989); *but see Bose Corp. v. Consumers Union of U.S., Inc.,* 806 F.2d 304 (1st Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

companies.[3]

## CONCLUSION

For the foregoing reasons, UAR's motion for taxation of costs of the letter of credit is denied, as is RCOA's motion to vacate taxation of costs imposed by the district court judgment clerk.

SO ORDERED.

---

**3.** Even if the necessity of the letter of credit were relevant, no evidence supports UAR's contention that the bonding company required a letter of credit before issuing the bond, as the letter of credit was not applied for until December 28, 1988, one week after the bond had been obtained. In addition, the entity that actually obtained the bond was not the British parent Thorn–EMI, but Thorn EMI North America Holdings, Capitol's parent incorporated in Delaware. Because UAR presents no information regarding the acceptability of Thorn EMI North America Holdings' financial statements to bonding companies, the need for the letter of credit is further called into question.